We're now going to move to Appeal Numbers 23-3337 and 24-1435, Joe Feazell v. Wexford Health Sources, Inc. at all. And we'll begin, Mr. Smith, with oral argument from you. Thank you and good morning. I'm Zane Smith for the appellate, Joe Feazell. I'd like to reserve some time. This appeal is about a prisoner who was denied medical treatment for hemorrhoids. And hemorrhoids are a condition that is non-serious or very serious. In this case, the failure to treat the hemorrhoids resulted in Joe requiring five surgeries to surgically repair them, including but not limited to an anal fissure surgery and subsequent Botox injections. The question before this court is whether or not the underlying trial judge so limited the claims that Joe had that he was denied his rights to a fair trial. Mr. Smith, as I understand it, you are also challenging the magistrate judge's authority to reconsider the summary judgment ruling? Is that accurate? No, that's not. The judge did have authority to do that. A magistrate judge does have the ability to overturn a district judge. The question here is whether she should have. And the ruling by the district judge in the original motion for summary judgment, in our opinion, really gives a foundation and a basis for allowing the issues that were presented at trial, I'm sorry, the issues that were originally in the complaint to be presented at trial to the jury. What the magistrate court did in this case was limit the claim of four years of treatment and failure to treat by Dr. Tilden to basically a one-week hospitalization. Joe's hemorrhoids became so bad that he had anemia, which was only discovered by one of his psychiatric doctors during a routine blood test. That anemia required immediate emergency hospitalization and a blood transfusion. All of that information was refused to be allowed to be presented to the jury by the magistrate judge. Mr. Smith, can I confirm? I want to make sure I'm following what you're saying here. Okay. Okay. Am I right that the claim that was allowed to go to trial was the claim about the treatment of Dr. Tilden, Dr. Tilden's treatment, during a 13-day period in December of 2018? That's correct. And your point is that's too limited? Absolutely. But that's the period of time we're talking about? Absolutely. And the judge's basis for that was that Dr. Tilden didn't have to basically go back and look at the medical chart prior to the treatment by Dr. Tilden. That it was appropriate for Dr. Tilden to avoid looking at the chart, to look at Joe's medical chart and his history of hemorrhoid treatments in determining that the issue before the jury was limited to one week. How did you preserve this issue before the district court? Because even in your motion to, in response to the defendant's motion to reconsider, your focus was on this 13-day period. I don't see you arguing before the court that everything else should be opened up. Well, two ways. First of all, the motions in limine were, well let me go back. The motion for summary judgment was determined by the court and that limited the times that we were allowed to give to the jury. Secondly, the motions in limine, the court made the determinations that it was originally a period of... But the summary, I want to go back to the summary judgment. The motion to reconsider that the magistrate judge granted, your response really focused in on this essential 13-day period. I didn't see you arguing that all the pre-hospitalization claims were what you were seeking to pursue. Well, I was the trial attorney and I argued all of these issues during the motions in limine. But that's after the summary judgment had been rolled on. That's correct. That is after the motion... So those are evidentiary issues, not trying to reopen claims. Well, the claim was for the deliberate indifference. The question is what was the scope of the claim that was to be allowed to be shown to the jury. That was the question. I understand, but your arguments in the summary judgment briefing before the magistrate judge were all focused on this 13-day period, not the pre-hospitalization claims against Wexford. So I don't know how you preserved those for appeal, is my question. Because the issue of the entire treatment by Dr. Tilden was included in the motion for summary judgment. The issues that were presented in the motion for summary judgment was the breadth and width of what Dr. Tilden did or didn't do and whether or not that would be allowed. For example, in the motion for summary judgment, the judge found that Dr. Tilden, because he did not treat Joe prior to the December date, and because my client signed the complaint on a particular date, that that was the only window that we'd be allowed to argue that Dr. Tilden failed to treat my client. In answer to your question, Judge Saini, is the issue of the breadth and width of the treatment was always contained within the motion for summary judgment. Question, Mr. Smith, on the policy, the Monell policy. There are portions of the record where the alleged policy seems to be failing to ensure that follow-up appointments were taking place. Then there's another area of the record of briefing where the policy that's being challenged seems to be the collegial review policy. Which is the relevant policy for purposes of our Monell analysis? I think they overlap. The collegial review process is the process of determining whether a prisoner needs outside or third-party treatment. By using that process, and if I may, hiding behind that process, as an excuse for not treating my client, I believe that raises the Monell claim. I would also remind the Court that Dr. Tilden was not a supervisor. He was a treater. The issue of the treatment or the failure to treat is the basis for the deliberate indifference. The collegial review process was brought up and discussed by Dr. Tilden in his determination that he wanted to go through a conservative treatment and have conversations with people and co-treaters. That resulted in four years of creams and iron pills for Joe instead of the surgery and higher third-party level of treatment that he required. Mr. Smith, there's an aspect of, did you say Fiesel? Fiesel. Mr. Fiesel argues that Dr. Tilden made a very deliberate and intentional choice not to review the totality of his medical records. What's the good faith basis for that allegation? Dr. Tilden's deposition. During the deposition of Dr. Tilden. He stated he intentionally did not review the records? He said that he did not have the time to review every patient chart for every prisoner in the prison. That he does not have the capacity to do that and therefore does not do that. That was in Dr. Tilden's deposition. Okay, that must be, okay. That's what Dr., I'll find it. I got it. I want to go back and follow up on Judge Brennan's question about collegial review. You've argued that is one of the policies that caused the harm and therefore there's a Monell claim against Wexford. We have said that collegial review, that that policy on its face is constitutional and therefore you have to offer evidence that it was obvious that policy would violate rights in order to succeed on this. What evidence did you offer that the collegial, it was obvious that this policy would violate your client's rights? Well, the collegial review was a policy that prevented any referral to third party medical treatment until that process was finished or determined. In this case, Dr. Tilden prescribed cyst baths, cyst baths, sorry for my pronunciation, six times and never followed up to make sure they were administered. And that was a general surgery policy to administer those. How is that collegial review, the cyst baths? Because during this collegial review, this process of determining whether or not third party medical treatment was required, Joe wasn't treated. He wasn't actually treated for his hemorrhoids. He was given cream, he was given iron pills, he was given cyst baths that were never administered. That was the basis that the collegial review process caused the delay by Dr. Tilden because he had to go through this process before he could refer Joe to a third party. I thought the magistrate judge said the cyst baths issue was never in the complaint and therefore it's not part of the litigation. Right, which I don't understand that because cyst baths is not a claim. It's not an independent claim. It's just part of the process of treatment. Whether the cyst baths... You're right about that, but is there an aspect of the complaint that you could refer us to that if we went and looked at, we could see that the claim is supported by factual allegations related to cyst baths treatment? The entire medical chart of Joe was put into the record and the medical chart itself refers to the six prescriptions for cyst baths. Right, so what about the complaint? Could you point me to a paragraph or two in the complaint? Because he's got to plausibly feed facts to support a claim. It does not specifically say the word cyst baths, but it's encompassed... That's the challenge the magistrate judge found, right? It's not in the complaint. Well, yeah, but neither was the iron pills. Neither was the actual surgeries. They're not in the complaint per se. They are part of the failure to chart, which was contained in the medical chart for Joe. We did not specifically refer in the complaint, failed to give cyst baths. What we did say is failed to treat in a timely manner, which resulted in a denial of that treatment. Is that to reserve the remainder of your time? Thank you. Very good, thank you. Thank you, Mr. Smith. Mr. Shearing will move to you now for argument on behalf of the appellee. Good morning, Your Honors, and may it please the Court. For the appellant to prevail, just based on the arguments you've heard this morning, you would have to revisit the personal involvement requirement, the actual knowledge requirement, the verifying medical evidence for delay requirement, the moving force requirement on Monell claims, and the continuing harm doctrine. And that was just based on the past, you know, 12 minutes. The claims at summary judgment were limited because Dr. Tilden did not have any personal involvement with the plaintiff's medical care until December 13th or 14th, 2018. That is why the claims were minimized or winnowed down, I think is the word we use in our brief. In order for Mr. Feazell's medical care to be brought in on a claim against Dr. Tilden, you would have to ignore the personal involvement requirement. There's no other way to get around that. In order for the plaintiff's claims about or the plaintiff's treatment post-hemorrhoidectomy, which occurred, I think, in February 2019, you would have to ignore the continuing harm doctrine because that's the end of the harm that was at issue in this lawsuit. The actual knowledge requirement is where this issue about the plaintiff's medical records comes into play. So I believe there were 2,500 or 2,600 pages of medical records that if, to take the appellant's point, that if Dr. Tilden was required to review this, that's 2,600 pages times however many patients he sees a day times however many days he provides care in a year. And for the record, Dr. Tilden did not say that he refused to review these medical records because he didn't have the time to do it. I believe his testimony was at his deposition that he did not do that because in his capacity as the medical director at Pontiac Correctional Center, he acts more like an emergent care physician. So you don't need all of the entirety of years and years and years of medical care to address the emergent issue that's being placed in front of you. And I believe it was on follow-up questions from plaintiff's counsel where he said, I wouldn't have the time to do that for every patient. So it's not the same. I understand that may be a little kind of splitting hair, but I think it is important that his reason was not that he didn't have time to do it. It was that for the care that he needed to provide in that moment, he did not need to review everything in every medical record for every patient that he saw. That's no different than in a non-correctional setting. For example, if I go to the emergency room or if anyone here goes to the emergency room, the emergency room physician does not review your entire medical chart before stopping bleeding. I think that's important to understand that Dr. Tilden was not required to do that. He did not testify that it was related to timing. It was because he did not need to do that in order to do his job. So turning really quickly now to the Monell claim that the appellant attempted to raise at the district court level, and I think this court struggled with that a little bit here this morning, it's not totally clear exactly what the Monell claim is because at various points, collegial review is discussed, at various points there's this policy, this unwritten policy of delaying care, at various points there are references to the Lippert reports, and so it's really not clear exactly what the scope of that claim was supposed to be. But no matter which one of those you deal with, the magistrate judge correctly dispensed with the Monell claim at summary judgment. If we're focusing on collegial review, the magistrate judge correctly ruled that this court has found that collegial review is not facially unconstitutional. And so as a result, she is bound to follow that decision. What was the evidence? Was there any evidence of it being obvious? Because as we said, it's facially constitutional, so then you have to show that it is going to obviously violate your rights. Mr. Smith has argued he put some of that evidence in. How do you respond to that? If that evidence was put in, I do not immediately recall when. I take Mr. Smith at his word that he did put that in, but I do not recall that evidence being put in or even attempting to put it in. His argument was that the evidence was that the delay through the collegial review process delayed the treatment, and that was obvious. And that gets to, I think, the verifying medical evidence requirement. But also, in this case specifically, if we look at the facts, when Dr. Tilden became aware of this low hemoglobin level, it was on December 27, 2018, at approximately, I think, 1 or 2 p.m., this record shows that Dr. Tilden then called the hospital in Pontiac, Illinois, and my understanding, based on the testimony, is that there's some sort of requirement that they have to get the emergency room physician, at least in the first instance, to concur that this individual in custody has to be sent to the hospital. That doctor, and I believe his name was Bernardi, did not agree with Dr. Tilden that that low hemoglobin level required Mr. Fiesel to be sent to the hospital. And so, as a result, Dr. Tilden then kind of continued care, continued monitoring, and when Mr. Fiesel's condition deteriorated later that afternoon into that evening, Dr. Tilden then had the basis to override Dr. Bernardi and send Mr. Fiesel to the emergency room. So, based on the facts that were presented at the district court level, there's no evidence that there was a delay. Dr. Tilden became aware of this issue on December 27th, and on December 27th, Mr. Fiesel was sent to the hospital. What about the delay in the referral? So, Mr. Fiesel was in the hospital from December 27th through December 29th, and he was then seen by a specialist, I want to say, in February. So, I'm not sure that that constitutes a delay. I don't know that I could get in to see a specialist that fast. So, I just don't see that there's evidence. It was a January 10th, 2019. It was a referral out for a colonoscopy outside the facility, right, that Dr. Tilden made. So, if there's a delay, the delay would have to be, I mean, the delay couldn't have started before he returned to the facility because he's under hospital care until the 29th. So, it would be a 12-day delay? Well, and Your Honor, that triggered a memory, and I believe this came out in the briefing or at trial. The reason that that referral for the colonoscopy had to occur was because Mr. Feazell refused a colonoscopy at the hospital. So, I don't know how you can, on the one hand, you know, refuse care, which then requires an additional layer of referrals, and then complain that there's been this delay in this referral. There's a lot of focus in the blue brief, in the reply brief about the colonoscopy itself, which happened in February of 2019. What's your best understanding of what's even being argued vis-a-vis Dr. Tilden? Because Dr. Tilden didn't perform the colonoscopy. He made the referral for it.  So, I don't know, I don't, I have a, maybe it's a question, maybe, we'll see what, I don't understand how the February 19th colonoscopy is neither here nor there in the fact pattern. I... Vis-a-vis Dr. Tilden, anyway. Correct. From Dr. Tilden's perspective, and from Wexford's perspective, Your Honor, I have some of the same struggles that it sounds like you had in briefing this. You know, there were, I want to focus just kind of one last point. The, and Dr. Tilden's affidavit in the motion for summary judgment discusses this. The, it goes to the moving force point on the Monell claim. Mr. Feazell's, this care that was allegedly delayed over a period of years prior to Dr. Tilden's personal involvement, the medical evidence, plaintiff's medical records actually show that he had, he appeared to have hemorrhoids that would recur, and that when they were treated with topical creams and the type of things that are kind of the first step in treating something like a hemorrhoid, they went away. And the evidence of that was that Mr. Feazell would come to whatever the health care unit at whatever facility he was at, would get this topical cream, and then there would be no discussion of hemorrhoids at any point for, you know, 6, 12, 18 months, and then he would come back and kind of rinse, wash, repeat. So, you know, I think that that's kind of, I don't see how collegial review or some unwritten, you know, policy or something related to that is the moving force of any of that. It appears that Mr. Feazell was given treatment, it worked, and when he needed the treatment again, he went and got it, and it worked. Can I go back for a moment, please, to the delay question? I thought the issue of the delay was the delay in requesting a referral in the first place, or sending out the referral, that the colonoscopy took place in February of 19, and when they did it, the doctor there recommended a surgical consult, but Dr. Tilden didn't send that surgical consult until about 2 months later, in April of 2019, and then he ultimately saw the surgeon in May. So I thought the claim, and please correct me if I'm wrong, was that the delay was that about 2 month referral time between the results of the colonoscopy and the time that Dr. Tilden actually referred him for a surgical consultation. Your Honor, I believe that goes to the issue about the allegations I think that the issue there was that that was not specifically referenced. I take that back. This... I thought that was part of the deliberate indifference claim, or really the focus of it, that it was this 2 month delay in actually making the  Your Honor, I think that was part of the issue with the exactly what allegations were pleaded within the complaint but even still you know, the ultimately the magistrate judge on summary judgment was able to review the record and I think correctly concluded applying applicable precedent that that claim was not what was there were no disputed facts about that. And I haven't seen anything in the briefing or heard anything in argument that suggests that this court should overturn that for any reason. Very good. Thank you Mr. Shearing. Thank you. Mr. Smith, we'll move to you for rebuttal argument. So in regards to the question of whether or not Dr. Tilden did or did not have time to look at the chart, the fact that a doctor is too busy is not a defense. Wexford receives a billion dollar a year to provide the medical and physician treatment for the prisoners in the Illinois Department of Corrections. This argument that I'm too busy, I can't go back, there's too many pages is either an issue that is ripe for the jury to make the determination as to whether or not that was a result of deliberate indifference or it wasn't. But that question was not allowed to be heard by the jury because the court determined on its own that Dr. Tilden never looked at the record and therefore did not have an obligation to know or review Joe's prior medical history in determining whether or not he did or did not need third party treatment. Now there's a question about a 12 day delay that is an issue that resulted from the court's improper order limiting Dr. Tilden's liability or the question, the issue of his liability for that one hospitalization. Our argument is it's a four year delay and despite what counsel said there was never ever any evidence of a resolution of the hemorrhoids. It was cream and iron pills, cream and iron pills and the Zitz baths were never given hence why Dr. Tilden prescribed the same Zitz bath for six times and he testified I don't know if they were ever given. He never followed up to determine whether the treatment again within their own surgical policy was ever administered. When do you think this four year delay began? Well 2015 is when he was first treated. But Dr. Tilden didn't see him until 2018. So how can you have a claim against Dr. Tilden going back to 2015? I don't have a claim. I can only have a claim Dr. Tilden for the time that he treated my client. But the treatment. So who's your four year claim against? The four year claim is in a history of how Joe hemorrhoid treatment was not taken. Who are you pursuing that four year claim against if not Dr. Tilden? Wexford. That's part of the process. That's part of the claim that is the Monell claim. It's the entire failure on the part of the medical providers to provide any kind of treatment other than actual  Actual treatment rather than creams and pills. And by the way is the last point. The refusal of the colonoscopy Joe said he did not refuse it. Even though the record referenced that that was a point of question of fact that should have been allowed to be determined and reviewed by the jury. Thank you Mr. Smith. Thank you Mr. Shearing. The case will be taken under advisement. Thank you.